IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 3:25cr33 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| ANTHONY CLYDE HOFFMAN, | : | |
| Defendant | : | |

····················································································

## <u>MEMORANDUM</u>

Before the court is Defendant Anthony Clyde Hoffman's motion to suppress evidence. (Doc. 28).  The indictment charges the defendant with one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. 15).

Hoffman's motion seeks to suppress all "primary and derivative evidence" seized during the execution of the search warrants. (Doc. 28 at 2).  Defendant asserts that his Fourth Amendment rights have been violated.  Specifically, the defendant asserts that the search warrants did not establish probable cause.  He also argues that the warrants that authorized the searches were overbroad. For the reasons set forth below, the motion will be denied.

## Background

At issue in this case are affidavits of probable cause for three warrants to search Hoffman's person, (Doc. 28-4, Ex. A), his residence, (Doc. 28-5, Ex. B),

and any "media storage devices such as cellular telephones, SD Cards, computers, or similar devices belonging to, utilized by, and/or in the possession of Hoffman, in and/or on [Hoffman] and/or [his residence]," involving the production of child pornography.[1] (Doc. 28-6, Ex. C at ECF p. 3). According to the government, the warrants led to the discovery of more than 800 images of child sexual abuse material or child pornography. (Doc. 36, Gov. Br. in Opp. at 2).

The affidavits of probable cause were authored by Department of Homeland Security Task Force Officer Molly Carson, the lead investigator in this case.[2] She submitted the warrant applications with the belief that there was probable cause that the defendant violated 18 U.S.C. § 2251(a), and § 2 by aiding and abetting the production of child pornography and that evidence of same would be located on Hoffman, in his residence, and on his electronic devices. Chief United States Magistrate Judge Daryl F. Bloom considered the

---

[1] The affidavits submitted in support of the warrant applications are materially identical in all respects, differing only as to the place to be searched, namely, Hoffman's person, his residence, and electronic media storage devices.

[2] Carson identified herself in the affidavits as a Task Force Officer with the Department of Homeland Security and Chief County Detective of the Pike County District Attorney's Office Criminal Investigation Division. (Doc. 28-4, Ex. A, Warrant App. ¶ 1). Carson's affidavits detail her professional experience, including experience in child abuse matters for over 10 years. (Id.) The court will refer to Carson as "Detective Carson" in this memorandum.

averments within the affidavits of probable cause and authorized the three search warrants. Below, the court reviews the information provided to the Chief Magistrate Judge by Detective Carson.

### *Carson's Investigation into Rashaad Taylor and Kevin Abbott*

Carson's affidavits of probable cause detail how authorities were led to Hoffman through their investigation of other individuals. Specifically, Carson's affidavits detail an investigation into alleged communications between Rashaad "Ray Ray" Taylor and a 13-year-old boy in Pen Argyl, Pennsylvania. (Doc. 28-4, Ex. A, Warrant App. ¶¶ 37–41). Taylor reportedly sent an image of his genitals to the child and met the child in person. (Id.) On September 14, 2024, law enforcement executed search warrants for Taylor's person and residence, authorizing the seizure of his cellphone and other electronic devices. (Id. ¶ 42).

Per Carson, a preliminary review of Taylor's cellphone led investigators to his alleged communications with Kevin Abbott and evidence of group chats where at least one minor victim was allegedly persuaded to share sexual photos with Abbott and Taylor. (Id. ¶¶ 43–52). Taylor's cellphone also allegedly contained evidence of a second minor victim ("MV2"). (Id. ¶ 59).

At the time of Carson's investigation, MV2 had reached the age of 18. (Id. ¶ 59). Carson placed a call to him. (Id. ¶ 60).

### Carson Relays MV2's Description of Events at a Lackawanna County Hotel

The affidavits of probable cause detail Carson's discussions with MV2:

> On October 3, 2024, I spoke to MV2 via telephone. I explained that the reason I was calling was because I thought he might know two individuals that I am investigating and mentioned Kevin Abbott and Rashaad Taylor by name. MV2 paused, audibly sighed, then apologized and said that this was difficult for MV2 to talk about.
>
> MV2 went on to tell me that day, and during additional conversations, that he met ABBOTT on Grindr when he was 16 or 17 years old. MV2 stated that he agreed to meet up with ABBOTT and one other man because they said that they would provide him with alcohol…
>
> MV2 describes the meeting that occurred herein as having occurred sometime in February of 2023. MV2 stated that ABBOTT had gotten a room at hotel in Lackawanna County and other men were there. MV2 stated that one adult male came to pick him up near his residence. MV2 described this individual as a white male in his 30's who looked clean cut with short hair and stated he worked in Human Services. MV2 stated this man picked him up in a dark colored Kia K-5 . . . .
>
> MV2 stated that upon his arrival to the hotel, ABBOTT provided him with vodka which he suspects was laced with a drug because he felt as if he blacked out. MV2 stated the following day, ABBOTT texted him and said "hey look what I took" and sent videos from the night before.
>
> MV2 stated that the other men involved also texted him afterwards, again looking to reengage in a sexual encounter.

(Doc. 28-4, Ex. A, Warrant App. ¶¶ 59-65) (paragraph numbers removed).

4

### *MV2 Implicates Defendant Hoffman in a Second Phone Call*

As Carson represented to the Chief United States Magistrate Judge, MV2 reengaged with law enforcement and provided them with information that led them to Hoffman:

> On October 4, 2024, MV2 contacted law enforcement to relay that he found a photo of the man who picked him up in the Kia to bring him to the hotel. He provided this photo to law enforcement. This man has been identified as Anthony Clyde HOFFMAN, the man who drove him, while he was underage, to have group sex at a hotel, who then engaged in sex acts with MV2 for the purpose of creating child pornography, and who then again later solicited him for sex, via cellphone.
>
> MV2 shared with law enforcement that this man, who is believed to be HOFFMAN, appeared to MV2 to have two different colored eyes, a fact again consistent with HOFFMAN'S physical appearance in his DMV photo.
>
> MV2 provided his relevant chats via Telegram to law enforcement.

(Id. ¶¶ 67–69) (paragraph numbers removed).

Carson also detailed in her affidavits that she reviewed Abbott's phone extraction and located a conversation dated from May 2024 wherein Abbott shared details and photographs from the hotel. At least two photographs mentioned by Carson in the affidavits allegedly depicted Hoffman engaged in sexual acts with MV2. (Id. ¶ 71).

### *MV2 Positively Identifies Hoffman, Taylor, and Abbott*

Carson's affidavits of probable cause also detail her in-person meeting with MV2, where he allegedly identified Hoffman, Taylor, and Abbott as participants in the arranged group sex at the hotel:

> On October 10, 2024, I met with MV2 and showed him Anthony HOFFMAN's driver's license photograph and he confirmed that he was the individual who picked him up before traveling to the hotel in Lackawanna County. MV2 was also shown photos of TAYLOR and ABBOTT and confirmed that they were present at the hotel as well.
>
> MV2 stated that he had lost consciousness while at the hotel with ABBOTT and HOFFMAN and stated when he awoke, two different men were in the room with him.
>
> During our October 10, 2024, meeting, I showed MV2 four (4) sanitized photos that I recovered from ABBOTT's phone extraction. Three (3) of the photos were sent from ABBOTT to another individual and ABBOTT explains that the photos are from an "orgy." MV2 identified himself in all photos.

(Id. ¶¶ 72–75) (paragraph numbers removed).

On November 25, 2024, Detective Carson obtained three search warrants from Chief Magistrate Judge Bloom for the target locations—Hoffman's home, person, and electronic devices. (Id. at ECF p. 1). Law enforcement detectives executed the search warrants on or about November 18, 2024. Per the government, authorities discovered numerous illegal images involving male

children between the ages of eight and twelve-years-old. (Doc. 36, Gov. Br. in Opp. at 2).

Defendant requests suppression of all primary and derivative evidence obtained under authority of the warrants.  In the alternative, defendant requests suppression of evidence seized under the authority of the portions he argues were overbroad.

**Legal Standard**

The Fourth Amendment guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The defendant bears the initial burden of proof to suppress evidence. United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995).  Once that showing is made, the burden shifts to the government to show by a preponderance of the evidence that the challenged search or seizure was reasonable. Id.; see United States v. Lowe, 791 F.3d 424, 432 n.4 (3d Cir. 2015).

The exclusionary rule bars the admission of evidence obtained from a search or seizure in violation of the Constitution as well as evidence derivatively acquired therefrom under the fruit of the poisonous tree doctrine. Herring v.

United States, 555 U.S. 135, 139 (2009); United States v. Smith, 575 F. Supp. 3d 542, 550 (E.D. Pa. 2021).

Because there are no disputed facts, the motion is being decided on the face of the warrants and the arguments presented in the parties' filings, as further developed at oral argument.  The parties have also confirmed, both in their submissions and at oral argument, that no factual disputes exist. (Doc. 36 at 45 n. 12; Doc. 53).

**Analysis**

### 1. Probable Cause

Hoffman asserts various arguments, reviewed below, to support his contention that Detective Carson's affidavits fail to establish probable cause. None of defendant's arguments are persuasive.

"To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  Probable cause is a "fluid concept" that is fact-specific and "not readily, or even usefully, reduced to a neat set of legal rules." United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (quoting Gates, 462 U.S. at 232)).

Where, as here, a defendant challenges an issuing magistrate judge's determination of probable cause, the court's review is circumscribed. The inquiry is limited to whether "the magistrate had a substantial basis for concluding that probable cause existed." Id. at 1055; see Gates, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (citations omitted)). In conducting that review, the court must consider the affidavit as a whole, interpreting it "in a commonsense and nontechnical manner." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (citing United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993)). "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and does not consider information from other portions of the record.' " United States v. Hodge, 246 F.3d 301, 305 (3d Cir.2001) (quoting Jones, 994 F.2d at 1055)).

Importantly, the court's task here "is not to decide probable cause de novo, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.' " United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (quoting Gates, 462 U.S. at 238)). In doing so, the reviewing court must defer to the fact that "[i]t is distinctly the magistrate's task to make the 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of

persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Williams, 974 F.3d 320, 350–51 (3d Cir. 2020) (quoting Gates, 462 U.S. at 238)). Accordingly, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [the reviewing court] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" Stearn, 597 F.3d at 554 (quoting Conley, 4 F.3d at 1205)).

Here, in the affidavits of probable cause, defendant's criminal liability rests on an aiding and abetting theory.  To succeed on an aiding and abetting theory, the government must establish that: 1) "the person who is being aided must be intentionally committing a crime;" 2) "the aider or abettor must know that the other is committing a crime;" 3) "the aider or abettor must have the purpose to aid that other to commit the crime;" and 4) "the aider must in fact render aid or assistance." United States v. Quality Formulation Lab'ys, Inc., 512 F. App'x 237, 241 (3d Cir. 2013) (quoting United States v. Nolan, 718 F.2d 589, 592 (3d Cir. 1983)).

*Averments Regarding Defendant's Knowledge in the Affidavits* - First, Hoffman argues that Detective Carson's affidavits do not include facts suggesting a fair probability that the defendant knew or believed MV2 to be under 18 at the relevant time, i.e., on January 15, 2023. (Doc. 29, Br. in Supp. at 14).  Defendant

10

further asserts that the affidavits contain no information suggesting that he filmed or photographed MV2, or that he knew or believed that Abbott was doing so. (Id. at 14-15).

However, the affidavits, viewed in their entirety, amply support the opposite conclusions and support the determination of probable cause. Detective Carson attested that she had personally observed photographs of Hoffman engaging in sex with a minor. (Doc. 28-4, Ex. A, Warrant App. ¶ 71). The minor victim himself provided a statement identifying both himself and Hoffman in the photographs. (Id. ¶ 74). That individual described to law enforcement the timing, location, and participants involved in the January 15, 2023 incident with specificity. (Id. ¶¶ 72-74).

Further, the affidavits recount how MV2 had agreed to meet with Abbott and another man, and that Abbott was excited that the child was underage. (See id. ¶ 62). The affidavits describe how Hoffman transported MV2 to the hotel where he had ample opportunity to speak with MV2, to view MV2's stature, and further observe MV2 fully nude in the hotel room. The magistrate judge is permitted to draw inferences from the affidavits. For example, it is reasonable to infer that Abbott would have shared images of MV2 with Hoffman or other information about him in advance of the sex acts so that Hoffman would know who he was going to have sex with. Absent such knowledge, it is unclear how

Hoffman would have been able to identify MV2 when he was picking him up to transport him to the hotel.

Hoffman contends that the affidavits do not assert that he knew or believed that the sex acts were being memorialized. That contention is unpersuasive. It is reasonable to infer that an individual, such as Hoffman, present in a hotel room, while another individual openly records multiple people engaging in sex acts, would be aware that such activity is being memorialized.

Accordingly, based on the affidavits, Chief Magistrate Judge Bloom made a practical, commonsense determination that Hoffman was aware others were engaged in the production of child pornography, such that he acted with the purpose of facilitating that conduct, and rendered aid and assistance in furtherance of the offense.

_Defendant's "Factual Nexus", "Staleness", and "Lack of Proof of Continued Conduct" Arguments_ – Hoffman next argues that, even assuming that Detective Carson's affidavits adequately suggest his involvement in the January 15, 2023 events, they fail to establish a sufficient nexus between the conduct and the evidence likely to be found at the target locations 22 months later, when the warrants were sought. (Doc. 29, Br. in Supp. at 15). In particular, Hoffman contends that the affidavits contain no indication that he ever sought or obtained

12

copies of any recordings or photographs from Abbott, or from anyone else. (Id. at 16). These arguments also fall short.

Under the law, "direct evidence linking the residence to criminal activity is not required to establish probable cause." Burton, 288 F.3d at 103. Rather, "probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." Id.

Here, Chief Magistrate Judge Bloom was tasked with deciding if probable cause existed to search the target locations based on a totality of the evidence put forth in the affidavits. Hoffman's arguments overlook that the affiant did not rely on mere speculation. Rather, the affidavits set forth the existence of evidence obtained prior to the issuance of the warrants which indicate that Hoffman engaged in group sex with a minor and then later solicited him for sex via cellphone. (Id. ¶ 67). By that point, Detective Carson also asserts that she had evidence that Kevin Abbott was advising other individuals about the group sex with Hoffman, Taylor, and MV2 and was sharing photographs.

The affidavits of probable cause further explain that officers possessed purported text messages between Abbott and Hoffman:

> In the text message thread, Tony asks ABBOTT if he deleted Telegram and ABBOTT says that he "freaked out for a min" and deleted all of his chats. ABBOTT says he got freaked out because someone on Grindr called him a perv

and said he was going to report him. HOFFMAN then shares a screen shot with ABBOTT which appears to be from Grindr. In the screenshot, someone asks HOFFMAN, "Aren't you the child predator I hear about?" HOFFMAN responds, "Couldn't be. Work in the field. All my clearances are good to go." The unknown user then responds, "Idk, I heard you lost your license over it." …

(Id. ¶ 77).  Other text messages from Hoffman to Abbott, include "I think it's time for me to be done with this. I haven't taken it too far and the curiosity is not worth this. Especially having only pushed limits and dealing with this." (Id. ¶ 78).

As for an explanation about what Hoffman's first reference to "this" might be, Detective Carson's affidavits fill in those blanks.  According to the affidavits, Abbott was conversing with a 16-year-old juvenile, while referencing Hoffman, and was requesting that the minor meet the two for sex, mentioning that Hoffman "likes the idea of a boy under 18 fucking him." (Id. ¶¶ 79–80).  Abbott asked the juvenile to send him photos of his body and penis. (Id.)  The juvenile complied by sending multiple naked photos of himself, including photos of his penis and anus. (Id.)  According to Carson, she could not rule out that Abbott then sent a difficult-to-track voice over internet protocol ("VOIP") phone number used by Hoffman to the minor. (Id. ¶ 80). This alleged exchange between Abbott and a purported minor supports a reasonable inference that a search would uncover evidence that Hoffman continued to engage in the production of child pornography after the events at the hotel involving Abbott, Taylor, and MV2 in 2023.

To the extent that some of these conversations dated back months or more than one year, "[a]ge of the information supporting a warrant application is a factor in determining probable cause." United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993) (citing United States v. Forsythe, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977)). "If too old, the information is stale, and probable cause may no longer exist." Id. (citing United States v. McNeese, 901 F.2d 585, 596 (7th Cir. 1990)).  However, staleness is not measured by the passage of time alone; rather courts must also consider "the nature of the crime and the type of evidence." Id. (citing United States v. Williams, 897 F.2d 1034, 1039 (10th Cir. 1990) and United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983)).

With respect to child pornography offenses "accomplished through the use of a computer [,]" the Third Circuit has recognized that relevant "information ... has a relatively long shelf life. It has not been, and should not be, quickly deemed stale." United States v. Vosburgh, 602 F.3d 512, 529 (3d Cir. 2010) (citing United States v. Shields, 458 F.3d 269, 279 n.7 (3d Cir. 2006)).  This is so for two principal reasons: (1) "persons with an interest in child pornography tend to hoard their materials and retain them for a long time[,]" Id. at 528 (citing Shields, 458 F.3d at 279 n.7)); and (2) "computers have 'long memor[ies]' ... [i]mages stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the

crime has been completed." Id. at 529 (quoting United States v. Gourde, 440 F.3d 1065, 1071 (9th Cir. 2006)); United States v. Caesar, 2 F.4th 160, 175–76 (3d Cir. 2021).  Moreover, "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance." United States v. Urb., 404 F.3d 754, 774 (3d Cir. 2005) (citation omitted).

Given the nature of the offense, the type of evidence sought, and the pattern of conduct described by Detective Carson from the communications on Abbott's phone regarding Hoffman, the approximately 22 month-gap between the 2023 events and the probable cause affidavits does not render the information stale. See United States v. Eberle, 266 F. App'x 200, 206 (3d Cir. 2008) (holding that information used to establish probable cause was not stale even though it was over three-and-a-half years old "because individuals protect and retain child pornography for long periods of time as child pornography is illegal and difficult to obtain.") (quoting United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002)); see also United States v. Prawdzik, 484 F. App'x 717, 723 (3d Cir. 2012) (holding that the passage of three years between the time of the offense and a search warrant does not render information used to establish probable cause stale).  It would be reasonable for Chief Magistrate Judge Bloom to have inferred

16

that such materials, once obtained, would be retained by Hoffman, notwithstanding the passage of time, and that evidence of the offense would remain at the locations to be searched.[3]  Thus, the affidavits established probable cause.

## 2. The Warrants Were Not Overbroad

Hoffman further contends that, even assuming that probable cause existed as to certain categories of items to be seized from the target locations, the warrants are impermissibly overbroad. (Doc. 29, Br. in Supp. at 25).  Specifically, Hoffman challenges the provision authorizing the seizure of "any and all child pornography" as defined under 18 U.S.C. § 2256(8), arguing that this language sweeps too broadly. (Id. at 26).  Notably, however, defendant does not identify any specific category of items authorized for seizure that lacked probable cause; instead, his motion advances a generalized assertion that the warrants, insofar as they authorize the seizure of child pornography located on his person, in his home, or in his electronic devices, are overbroad. (Id.)

---

[3] Hoffman also asserts that the affidavits failed to establish a fair probability that he aided and abetted the production of child pornography on any occasion other than January 15, 2023. (Doc. 29, Br. in Supp. at 22).  That argument misses the mark.  Based on the totality of information set forth in the affidavits, it is reasonable to infer that Hoffman's involvement was not limited to a single incident. See Jones, 994 F.2d at 1056 (explaining that "probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.") (internal citations and quotations omitted)).

17

To assess whether a warrant is overbroad, the court "must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit." In re Impounded Case (L. Firm), 840 F.2d 196, 200 (3d Cir. 1988).

An impermissible "general warrant authorizes 'a general, exploratory rummaging in a person's belongings.'" United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 149 (3d Cir. 2002) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). Such a warrant "vest[s] the executing Detectives with unbridled discretion to conduct an exploratory rummaging through defendant's papers in search of criminal evidence." Id. (quoting United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982)) (original alterations omitted). Accordingly, a warrant is overbroad where it " 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." Id. (quoting Christine, 687 F.2d at 753–54)).

In the context of digital evidence, however, warrants may be framed in relatively broad terms. United States v. Morgan, 562 F. App'x 123, 128 (3d Cir. 2014). When the suspected criminal activity involves digital transmissions or communications, it is appropriate for a warrant to permit the search and seizure of any "computers ... found in the home, including the hard drives." Id. "[A]s a

18

practical matter, when a search requires review of a large collection of items, ... 'it is certain that some innocuous [items] will be examined, at least cursorily, in order to determine whether they are, in fact, among those [items] authorized to be seized.' " United States v. Stabile, 633 F.3d 219, 234 (3d Cir. 2011) (quotation omitted)). "[G]iven the nature of computer files and the tendency of criminal offenders to mislabel, hide, and attempt to delete evidence of their crimes, it would be impossible to identify *ex ante* the precise files, file types, programs and devices that would house the suspected evidence." United States v. Karrer, 460 F. App'x 157, 162 (3d Cir. 2012); see also United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006) ("[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate."); Christine, 687 F.2d at 760 ("[T]he use of generic classifications in a warrant is acceptable when a more precise description is not feasible."). As the U.S. Supreme Court has cautioned, "[t]echnical requirements of elaborate specificity ... have no proper place in this area." United States v. Ventresca, 380 U.S. 102, 108 (1965).

Based on the foregoing, the warrants at issue here did not authorize the sort of exploratory rummaging prohibited by the Fourth Amendment. Rather, they were expressly limited to the search for evidence of the offenses identified in

the affidavits and supporting application. The warrants further restricted the scope of the search by permitting seizure only of materials reflecting the identity of individuals who "used, owned, or controlled" and "created, edited, or deleted," the items described in the warrant as related to child pornography. (Doc. 28-4, Ex. A, Warrant App. ¶ 18(a)). In this way, the warrants were tailored to the investigation of child pornography and to identifying their source.

Furthermore, the record reflects that Detective Carson was aware of conversations suggesting that Hoffman may have taken steps to cover his digital tracks.[4] Against that backdrop, the breadth of the warrants, particularly as to digital media, was reasonably calibrated to account for the risk of concealment or destruction of evidence. The warrants did not authorize a wholesale search of "all data" on Hoffman's devices; instead, they imposed meaningful limitations tied to the suspected criminal conduct.

---

[4] As reflected in the affidavits, Hoffman, in a text exchange with Abbott, inquired whether Abbott had "deleted Telegram and Abbott [responded] that he 'freaked out for a min' and deleted all of his chats. Abbott [also said] he got freaked out because someone on Grindr called him a perv and said he was going to report him." (Doc. 28-4, Ex. A, Warrant App. ¶ 77). In reply, Hoffman shared a screenshot in which someone asked him " 'Aren't you the child predator I hear about?' Hoffman respond[ed], 'Couldn't be. Work in the field.' " (Id.) Hoffman then added that "I think it's time for me to be done with this. I haven't taken it too far and the curiosity is not worth this. Especially having only pushed limits and dealing with this." (Id. ¶ 78). A month later, Hoffman stated that "his life is in pieces and that he is getting divorced and lost his job due to 'that accusation' and that his life has been in a downward spiral. [Hoffman] [said] that he is now living with his parents and working at a gym." (Id.)

Therefore, the search warrants were not general warrants and do not offend the Fourth Amendment's particularity requirement.[5] See Karrer, 460 F. App'x at 161 (explaining that a warrant to seize images of child pornography was not a general warrant where it "identified particular devices and file types to be searched for evidence of a specific statutory offense.").

### 3. Good Faith Exception

The government asserts that the good faith exception applies here. According to the government, even assuming *arguendo* that the affidavits fail to establish probable cause, the motion to suppress should nevertheless be denied under the good faith exception to the exclusionary rule. (Doc. 36, Br. in Opp. at 42).

The absence of probable cause does not invariably require suppression of evidence obtained pursuant to a warrant. Caesar, 2 F.4th at 167.  The exclusionary rule is not intended to grant defendants any individual rights beyond the text of the Fourth Amendment as it is a prudential remedy designed to deter future constitutional violations. Id. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least

---

[5] Additionally, a search warrant itself need not "contain a particularized computer search strategy." United States v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 2005).  To the contrary, it would be "folly for a search warrant to attempt to structure the mechanics of the search" because "imposing such limits would unduly restrict legitimate search objectives." United States v. Burgess, 576 F.3d 1078, 1094 (10th Cir. 2009). Thus, the scope of the search must be "constrained by content." Id. at 1093.

21

negligent, conduct which has deprived the defendant of some right." Zimmerman, 277 F.3d at 436. Accordingly, "the exclusionary rule applies only where it results in appreciable deterrence." United States v. Werdene, 883 F.3d 204, 218 (3d Cir. 2018) (cleaned up).

To that end, the United States Supreme Court "established the 'good faith' exception to the exclusionary rule, which prohibits suppression of 'evidence obtained in objectively reasonable reliance' on a warrant later invalidated for lack of probable cause." Caesar, 2 F.4th at 167 (quoting United States v. Leon, 468 U.S. 897, 922 (1984)).

The Third Circuit has identified four circumstances where the good faith exception would not apply:

> (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized.

United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010) (citing Zimmerman, 277 F.3d at 436–437).

22

In opposition, the government argues that none of the above four circumstances identified in Tracey are present here. (Doc. 36, Br. in Opp. at 42). The government maintains that Hoffman cannot establish the applicability of any of those circumstances. (Id.)

In his reply brief, Hoffman contends that the good faith exception is inapplicable. (Doc. 37, Reply Br. at 3-12).  Hoffman does not, however, meaningfully analyze how any of the four circumstances identified in Tracey apply in this case.  Instead, defendant merely reiterates his arguments that the warrants were overbroad and unsupported by probable cause.  The court has already addressed and rejected these arguments.  See Tracey, 597 F.3d at 153 (rejecting defendant's argument that "the good faith exception does not apply because the warrant is 'general,' and that good faith cannot save a general warrant.").

In any event, upon careful review, the parties' submissions reveal no basis to conclude that any of the four circumstances prohibiting the application of the good-faith exception are present here.  Accordingly, even if probable cause were lacking, suppression would not be warranted.  Hoffman's motion to suppress will thus be denied.

## Conclusion

For the reasons set forth above, Hoffman's motion to suppress, (Doc. 28), will be denied. An appropriate order follows.  By way of separate order, this matter will be listed for trial.

BY THE COURT

_____
JUDGE JULIA K. MUNLEY
United States District Court

24